**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DUTCH VALLEY GROWERS, INC.,** | ) | |
| **an Illinois corporation, and** | ) | |
| **JAMES PAARLBERG d/b/a PAARLBERG** | ) | |
| **FARMS, an Indiana sole proprietorship,** | ) | |
| | ) | |
| Plaintiffs, | ) | No. 15 C 10667 |
| | ) | |
| | ) | |
| v. | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **JOHN RIETVELD, individually,** | ) | |
| **DUTCH VALLEY PARTNERS, LLC,** | ) | |
| **an Illinois limited liability company,** | ) | |
| **DUTCH VALLEY HYBRIDS, LLC,** | ) | |
| **an Illinois limited liability company, and** | ) | |
| **KATHY ROSENBERG, individually,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The defendants have filed a motion to dismiss this case under Fed.R.Civ.P. 12(b)(3), or

transfer it to the Central District of Illinois under 28 U.S.C. §1406(a). They claim that the residence

of the individual defendants, the primary place of business of the corporate defendants, and the

residence of all but one of the active corporate shareholders of the plaintiff is Kankakee County in

the Central District of Illinois. Thus, they argue that venue is improper in the Northern District of

Illinois.

## BACKGROUND

The plaintiffs charge the defendants with secretly registering their marks as trademarks and,

essentially, looting their customers lists and trade secrets. According to the Complaint, from 2006

on, John Rietveld worked for Dutch Valley Growers ("Growers"), and later Dutch Valley Partners

("Partners"), which were both located in Bourbonnais, Illinois. [Dkt. #1, ¶¶ 29-36].[1]  Partners was an affiliate of Growers, formed by Growers' shareholders to sell farm products beyond the onions and onion sets sold by Growers; products ranging from garlic to seed potatoes to strawberry roots. [Dkt. #1, ¶ 32].  The Growers' shareholders held a 5/6 interest in Partners, with Mr. Rietveld and Kathy Rosenberg holding the remaining 1/6 jointly. [Dkt. #1, ¶ 33].  Mr. Rietveld was Partners' manager and Growers' bookkeeper; Ms. Rosenberg handled the books for Partners.  [Dkt. #1, ¶¶ 30, 35, 36].

As for the events that gave rise to this litigation, the Complaint alleges that, in 2011, Mr. Rietveld retained counsel to register the plaintiff's marks in the name of Partners, obtaining certificates of registration in September 2012. [Dkt. # 1, ¶¶ 38-43].  The Complaint further alleges that Mr. Rietveld and Ms. Rosenberg failed to maintain separate books for Growers and Partners from the time Partners was formed in 2006, which proved detrimental to Growers. [Dkt. # 1, ¶¶ 52-66].  Mr. Rietveld, along with Ms. Rosenberg, then managed to acquire the Growers' shareholders' interests in Partners, all the while concealing the trademark registrations. [Dkt. # 1, ¶¶ 67-77].  They left Growers' employ in June 2007, but not before allegedly helping themselves to Growers' confidential customer information, office furniture, computers, and supplies. [Dkt. #1, ¶¶ 78-90]. The plaintiff alleges they began selling to Growers' customers and others using Growers' marks and confidential information.

---

[1]  Growers' website indicates it is currently located in La Crosse, Indiana. http://www.dutchvalleygrowers. com/about/

## VENUE UNDER 28 U.S.C. §1391

Venue is governed by 28 U.S.C. §1391(b), which provides that:

[a] civil action may be brought in –

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated;

> \*       \*       \*

28 U.S.C. 1391(b)(1); (2).  The statute goes on to explain that businesses like corporate defendants here are said to reside "in any district in [Illinois] within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State . . . ."  28 U.S.C. §1391(d). Determining where a claim arose and where venue is proper is, at best, an imprecise task.  *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 67 (N.D. Ill. 2009).   "District courts have a substantial amount of discretion in determining venue, which is an inquiry focused on fairness and convenience of the parties as opposed to constitutional considerations."  *Id.* (quotations omitted).

When considering a motion to dismiss for improper venue under Fed.R.Civ.P. 12(b)(3),  the court assumes the truth of a plaintiff's allegations, unless they are contradicted by a defendant's affidavits, and all reasonable inferences are drawn in favor of the plaintiff.  *Smart Oil*, 2016 WL 521071, at \*2; *Leon's Auto Sales, Inc. v. Leedom & Associates, LLC*, 2015 WL 4978696, at \*2 (N.D. Ill. Aug. 19, 2015); *Moore v. City of Kankakee*, 2015 WL 2455116, at \*1 (N.D. Ill. May 22, 2015). When faced with a motion to dismiss for improper venue under Fed.R.Civ.P. 12(b)(3), the plaintiff bears the burden of proving venue is proper. *Smart Oil, LCC v. DW Mazel, LLC*, 2016 WL 521071,

at *2 (N.D. Ill. Feb. 10, 2016); *Moore v. City of Kankakee*, 2015 WL 2455116, at *1 (N.D. Ill. May 22, 2015); *Dimitrov v. Nissan N. Am., Inc*., 2015 WL 9304490, at *1 (N.D. Ill. Dec. 22, 2015).

The Complaint, while prolix at 214 paragraphs spread over 57 pages, makes scant mention of locations in the Northern District of Illinois, other than the usual conclusory references found in the venue sections of all Complaints.  It alleges that Mr. Rietveld and Ms. Rosenberg live in Bourbonnais and Bradley, Illinois, respectively, both of which are in Kankakee County. [Dkt. #1, ¶¶ 9, 12].  The corporate defendants – Partners and Hybrids – are both conceded to have their principal places of business in Bourbonnais as well.  But, the companies are said, upon information and belief, to transact business "in DuPage County and elsewhere." [Dkt. #1, ¶¶ 10, 11].  The Complaint alleges venue is proper in the Northern District of Illinois pursuant to 29 U.S.C. §1391(c)(2) because "Partners and Hybrids transact business in the Northern District of Illinois, and because part of the events giving rise to the claims occurred within the Northern District of Illinois. The damage to Growers described herein takes place in part in the Northern District of Illinois and throughout the United States." [Dkt. #1, ¶ 15].

The only specific reference is to a hardware store in Sandwich, Illinois – alleged to be a customer of  Growers – where the Complaint claims the defendants sent a Partners product order form bearing the plaintiff's marks. [Dkt. # 1, ¶ 106].  While the form is attached to the Complaint, there is nothing to indicate where it was sent; it's merely a standard form that could have ended up anywhere or could have never left the Central District of Illinois. [Dkt. # 1, Ex. 9]. That's not much to go on and, once the defendants challenged them on venue, the plaintiffs, having the burden of proof, had to offer some evidence. To that end, they have submitted an affidavit from Growers' head of sales, Ryan Paarlberg, who has held that position since December 2014.  He states that the

manager of Hacker's Garden Center – one of Grower's customers – gave him a copy of a customer solicitation letter [Dkt. #1, Ex. 1] and told him he had received it by fax from defendants, Rietveld and Rosenberg. [Dkt. # 29-1, ¶¶ 4-5]. Hacker's Garden Center is located in Lombard, Illinois, within the Northern District of Illinois. The defendants do not deny they sent it, but explain that Hackers was a customer of *Partners*, which the Complaint indicates had been assigned to the defendants. [Dkt. #31-2].

Mr. Paarlberg also states that, as of 2015, Growers had 43 active customers in Illinois, with 26 located in the Northern District of Illinois. [Dkt. # 29-1, ¶ 7]. The plaintiffs argue that, given the defendants' misappropriation of their customer information and their solicitation of Hacker's Garden Center, "the reasonable inference is that Defendants have contacted and solicited all of Growers' customers, the substantial majority of which (26 of 43) from Illinois are located in the Northern District of Illinois." [Dkt. # 29, at 4-5]. The plaintiffs also submit a retainer agreement the defendants had with counsel in Lincolnshire in the Northern District of Illinois to handle the trademark registration. [Dkt. # 29-2]. And, finally, the plaintiffs point to an invoice indicating the defendants hired a Wheaton IT firm to "fully wipe" all Growers' information out of the computers. [Dkt. #29, at 6; Dkt. #1, Ex. 12].

This scanty evidence does not begin to show that the substantiality of contacts required when venue is challenged. All the invoice shows is that the computers were *wiped*, not that any information was copied and downloaded elsewhere. And the invoice shows the IT firm charged for travel, suggesting the work was done onsite in Bourbonnais. Employing a lawyer from a national law firm whose office was outside the district seems more random than significant in terms of venue. *Cf. Luera v. Godinez*, 2015 WL 1538613, at *4 (N.D. Ill. Mar. 30, 2015)(collecting cases)(location

of counsel not a factor to consider in transfer of venue under §1404). And one customer contacted by mail in the Northern District of Illinois is too flimsy a reed to support venue, *Westnofa USA Inc. v. British Design (U.S.A.) Corp.*, 1983 WL 420, at *4 (N.D. Ill. Nov. 8, 1983), especially when there is a dispute over whose customer it was.

Perhaps realizing the tenuous contacts within this district, the plaintiffs argue that "[a]s long as the connection to the forum is more than 'minuscule', such contact is deemed 'substantial' and venue is proper within the forum." [Dkt. #29, at 3]. But that formulation is plainly mistaken. To say that anything that is in any way more than "minuscule" is "substantial," is to make a mockery of the English language. "Unlike Humpty Dumpty, however, a litigant cannot use words any way it pleases." *Omni Tech Corp. v. MPC Solutions Sales, LLC,* 432 F.3d 797 (7th Cir.2005). Abraham Lincoln once was asked how many legs a donkey has if you call its tail a leg. His answer was four: calling a tail a leg does not make it one. *Blue Cross Blue Shield of Massachusetts, Inc. v. BCS Ins. Co.,* 671 F.3d 635, 638 (7th Cir. 2011). Just so with the plaintiffs' attempt essentially to equate "substantial" and "minuscule." *Compare DiSanto v. Pennsylvania*, 273 U.S. 34, 43 (1927)("the logic of words should yield to the logic of realities."). Like all other questions in law, substantiality is a question of degree. *Cf. Empire Trust Co. v. Cahan,* 274 U.S. 473, 478 (1927); *Eastern Food Svcs, Inc. v. Pontifical Catholic University Svcs. Assn., Inc.,* 357 F.3d 1 9 (1st Cir. 2004).

The cases the plaintiffs cite as support for their argument do not begin to support the proposition for which they are offered. Those cases – and others – require "significant activities" and say only that minuscule contact with a forum is not enough. *Specht v. Google, Inc.*, 660 F. Supp. 2d 858, 866 (N.D.Ill. 2009); *Beveridge v. Mid–West Management, Inc.,* 78 F.Supp.2d 739, 746 (N.D.Ill.1999). In other words, the clear takeaway from these cases and others is that while more

than minuscule contact is a necessary condition for proper venue, it is not a sufficient one.  Indeed, the progenitor of the Northern District of Illinois case from which the plaintiffs excised the "minuscule" reference held that contact entirely by mail was "minuscule" and thus could not support venue.  *Honda Associates, Inc. v. Nozawa Trading, Inc*., 374 F. Supp. 886, 892 (S.D.N.Y. 1974).[2] That makes the defendants' contact with the Northern District of Illinois – one disputed mail order form, an email from an attorney, and a couple of IT people making a drive to Bourbonnais from Wheaton – minuscule as well and, in any event, certainly not substantial for the purposes of 28 U.S.C. §1391(b)(2).

The plaintiffs' fallback position is that venue is proper in the Northern District of Illinois under 28 U.S.C. §1391(b)(1) because, under 28 U.S.C. §1391(d) the defendants reside in the Northern District of Illinois.  As mentioned earlier, in cases brought in states with multiple judicial districts – such as Illinois – a corporation is said to reside in any district in which it would be subject to personal jurisdiction were that district a state.  28 U.S.C. § 1391(c)(2); (d).

In a federal question case such as this one, a federal court has personal jurisdiction over a defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant. *Omni Capital International, Ltd. v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104–05 (1987) (federal court should look to a federal statute or to the state long-arm statute to

---

[2] Of course, as the chain of cases moves further from the original case, there is a tendency for the original thought to become adulterated. *See Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt., Ltd.*, 364 F.3d 884, 887 (7th Cir. 2004)("In a system of case law there is a tendency, . . . for a drift away from the language of a statute or a rule, with cases increasingly quoting previous cases rather than returning to the language and purpose of the provision underlying the judge-built superstructure. Sometimes there are compelling reasons for such a drift but often it is due just to imprecision of paraphrase.").  While that may have happened to some extent here, no case went so far as to find contacts to be substantial the moment the needle edges past "minuscule."

determine defendant's amenability to service, which is "a prerequisite to its exercise of personal jurisdiction"); *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).[3] The Seventh Circuit has suggested that there is no meaningful difference between the two tests but, to the extent they are not co-extensive, Illinois' would likely be more restrictive than the federal test. *KM Enterprises*, 725 F.3d at 732; *Mobile Anesthesiologists*, 623 F.3d at 443; *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 756-57 (7th Cir. 2010). As such, in cases dealing with personal jurisdiction or venue under §1391(d), the court has focused on the federal test. "If [a party] may not be subjected to personal jurisdiction . . . under federal constitutional standards, then we need not worry whether jurisdiction is also proper under the Illinois Constitution." *KM Enterprises*, 725 F.3d at 732; *Mobile Anesthesiologists*, 623 F.3d at 443.

Federal due process requires that personal jurisdiction be exercised only when a party has "certain minimum contacts with [the forum] such that the maintenance of the suit [there] does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945); *KM Enterprises*, 725 F.3d at 732. It is unconstitutional to force a defendant to appear in a distant court unless it has done something that should make it reasonable to anticipate being haled into court there. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 (1985); *Mobile Anesthesiologists*, 623 F.3d at 444. Personal jurisdiction may be either general or

---

[3] Plaintiffs bring this action under the Lanham Act and the Computer Fraud and Abuse Act. Plaintiffs do not suggest that either statute has a provision covering amenability to service of process or personal jurisdiction. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc*., 751 F.3d 796, 800 (7th Cir. 2014)(Lanham Act has no such provision).

specific. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, __ U.S. __, 131 S.Ct. 2846, 2853–54 (2011); *KM Enterprises*, 725 F.3d at 732. If a defendant's contacts with the forum are "continuous and systematic," it can be subject to general jurisdiction; that is, it can fairly be treated as present in the forum for all purposes. *uBID, Inc. v. GoDaddy Grp., Inc*., 623 F.3d 421, 425 (7th Cir. 2010). Plaintiffs don't assert that's the case here; nor could they based upon the meager evidentiary record at this early point in the proceedings. Instead, they rely on specific jurisdiction.

Specific jurisdiction can arise through more limited contacts if the plaintiff can show that its claims against the defendant arise out of the defendant's constitutionally sufficient contacts with the state. *uBID,* 623 F.3d at 425; *Mobile Anesthesiologists*, 623 F.3d at 444. The plaintiffs contend that engaging counsel located in the Northern District of Illinois to register their marks, and sending an order form to a customer in the Northern District of Illinois are contacts sufficient to establish specific jurisdiction. [Dkt. #29, at 8-9]. We've already discussed how flimsy these contacts are. In the context of specific jurisdiction, they are "random, fortuitous and attenuated." *Burger King,* 471 U.S. at 475.

Still, plaintiffs seem to want to liken these contacts to those found sufficient in *uBID*. [Dkt. #29, at 7-9]. But in that case, the court based specific jurisdiction on "extensive marketing" that resulted in the defendant "thoroughly, deliberately, and successfully exploit[ing] the Illinois market." *uBID*, 623 F.3d at 427. The campaign "created substantial business" in Illinois for the defendant in *uBID* and garnered them "hundreds of thousands of customers" in that forum. 623 F.3d at 428. Here, the business that Partners – not to mention Growers – has generated in the Northern District of Illinois can best be described as *de minimis.* [Dkt. #31-2 (business in Northern District of Illinois was less than one-half or one percent of total sales of Partners . . . and Growers)].

9

Beyond that, specific jurisdiction encompasses notions of "fair play" and the reasonable foreseeability of being haled into court in the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).   In this instance, as already discussed, the individual defendants reside in the Central District of Illinois, and the two corporate defendants are located there as well.  Even plaintiff, Growers, is said to be located in the Central District of Illinois. [Dkt. #1, ¶ 29].  Three of the five partners in Growers resided in the Central District of Illinois; there is nothing to suggest the other two are located in the Northern District.  The only party in this case not tied to the Central District of Illinois is plaintiff, Paarlberg Farms, and it is located in Indiana.

Given all this, the question is how it was determined that it would be proper to bring this suit in the Northern District of Illinois.  Certainly not on the strength of a single fax to a single customer in this district. More likely (and to a certain extend, understandably, the decision was one of convenience) because plaintiffs' counsel are located in Wheaton in the Northern District of Illinois. But location of counsel is generally of no moment in the venue calculus. *See Luera v. Godinez*, 2015 WL 1538613, at *4 (N.D. Ill. Mar. 30, 2015); *Rivera v. Meskin*, 2015 WL 1000413, at *2 (N.D. Ill. Mar. 3, 2015).  At bottom, while it certainly would have been foreseeable to be haled into court in the Central District of Illinois, the same cannot be said for the Northern District of Illinois. Accordingly, it must be concluded that the plaintiff has not met its burden of establishing proper venue under 28 U.S.C. §1391.

### TRANSFER UNDER 28 U.S.C. §1406

Thus, the question becomes whether to dismiss the case or transfer it.  Under 28 U.S.C. §1406:

10

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a).

Oddly, the plaintiff seems to favor dismissal, or at least that would be the practical result of accepting its argument that the defendants have not established that transfer is proper. [Dkt. # 29, at 9]. But the salient point is that the plaintiffs have not established that venue is proper in the Northern District of Illinois. With that issue disposed of, it is within the court's discretion to transfer the case to another district where it could have been brought; *i.e.*, where venue *is* proper. There is nothing in §1406 about shifting of burdens to the defendants. As is clear from their citation to *TIG Ins. Co. v. Brightly Galvanized Products, Inc.*, 911 F. Supp. 344 (N.D. Ill. 1996), plaintiffs have confused §1406 with §1404, which deals with motions for change of venue and specifically mentions factors like convenience of parties and witnesses.

Again, the only determination to made at this point in the case under §1406(a) is whether the case could have been brought in the Central District of Illinois. And it's obvious that it could have. All four defendants reside in that district, so venue is obviously proper under 28 U.S.C. §1391(a). At the very least, a substantial part of the events giving rise to the Complaint occurred in the Central District of Illinois, so venue is proper under §1391(b) as well. And, plaintiffs' curious stance seemingly favoring the dismissal of its action notwithstanding, transfer is ordinarily in the interest of justice because dismissal of an action that could be brought elsewhere is "time consuming" and may be "justice-defeating." *Goldlawr, Inc. v. Heiman,* 369 U.S. 463, 467 (1962). Accordingly, this case will be transferred to the Central District of Illinois. If plaintiffs truly prefer it be dismissed instead they can certainly inform that court of their preference with a motion under Fed.R.Civ.P.

11

41(a).

## CONCLUSION

The defendants' motion to dismiss or transfer to the Central District of Illinois [Dkt. #14] is granted.

ENTERED: _____
                UNITED STATES MAGISTRATE JUDGE

**DATE:** 3/15/16