UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | | |
|---|---|---|
| DUTCH VALLEY GROWERS, INC., an Illinois corporation, and JAMES PAARLBERG d/b/a PAARLBERG FARMS, an Indiana sole proprietorship, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 16-CV-2085 |
| JOHN RIETVELD, individually, DUTCH VALLEY PARTNERS, LLC, an Illinois limited liability company, DUTCH VALLEY HYBRIDS, LLC, an Illinois limited liability company, and KATHY ROSENBERG, individually, | ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' MEMORANDUM REGARDING DISCOVERY ISSUE

NOW COME Plaintiffs/Counter-Defendants, Dutch Valley Growers, Inc. ("Growers") and James Paarlberg, individually and d/b/a Paarlberg Farms ("Paarlberg") (collectively "Plaintiffs"), and in response to the "Memorandum Regarding Discovery Issue" of Defendants/Counter-Plaintiffs, John Rietveld ("Rietveld"), Dutch Valley Partners, LLC ("Partners"), Dutch Valley Hybrids, LLC ("Hybrids"), and Kathy Rosenberg ("Rosenberg") (collectively Defendants"). Defendants' memorandum fails to accurately relay the key facts underlying the legal claims at issue in this matter, which form the scope of discovery.

## INTRODUCTION

As an initial matter, Defendants filed their "Memorandum Regarding Discovery Issue" after over two weeks of failing to respond to several telephone calls and correspondences from Plaintiffs' counsel regarding Defendants' promised supplemental discovery responses and

Plaintiffs' proposed Agreed Confidentiality Order. On August 25, 2016, after Defendants failed to respond to Plaintiffs' efforts to resolve the pending discovery issues, Plaintiffs filed correspondence pursuant to the Court's instructions, outlining the discovery issues in advance of the August 29, 2016 Status Conference. (See Dkt. 55 and attached exhibits A-F, attached hereto as Exhibit 1.) After Plaintiffs filed the status update with the Court, on Friday August 26, 2016 Defendants' counsel called Plaintiffs' counsel but continued to demand "attorney eyes only" for sales and income information. On that Friday, Defendants filed their "Memorandum Regarding Discovery Issue".

More importantly, Defendants' filing fails to adequately apprise the Court of the central issue in dispute regarding discovery. The current discovery dispute does not relate to whether Plaintiffs are entitled to the material sought, as Defendants have already acknowledged the requested documents are responsive and they must produce the requested information and documents. Rather, the only outstanding issue is *who should receive or view the responsive material*. Defendants proposed that "Highly Confidential" information and documents (e.g., all sales, income, financial, pricing and customer information) should only be viewed by counsel for the parties (i.e., "Attorney Eyes Only").

While Plaintiffs believe that the responsive material can be protected with a protective order, it must be reviewed by counsel with Plaintiffs in order to adequately interpret and understand the information and prepare the case for trial. As explained below, the scope of Defendants' proposed Confidentiality Order is far too restrictive given the facts and legal claims at bar. Whether the parties should view the sales, income, and customer information produced by both parties is also controlled by the facts and claims in this case. However, Defendants summarize the facts inaccurately and incompletely and argue facts that do not exist in the

2

pleadings. Accordingly, the relief sought by Defendants' "Memorandum Regarding Discovery Dispute" must be denied.

## **PROCEDURAL BACKGROUND**

On April 6, 2016, Plaintiffs issued and served upon Defendants both Interrogatories and Request for the Production of Documents tailored to the claims alleged in the Complaint. (See Interrogatories and Requests for Production of Documents, Exhibit D attached to Exhibit 1.) No responses or objections were timely received. On June 24, 2016 and July 7, 2016, respectively, Plaintiffs' counsel issued correspondences seeking the outstanding responses after Defendants failed to respond to Plaintiffs' written discovery for nearly 3 months. (See Correspondences dated June 24, 2016 and July 7, 2016, Exhibit C attached to Exhibit 1.)

On July 22, 2016, Defendants served answers and responses which were deficient and incomplete. (See Exhibit D attached to Exhibit 1.) In response, through correspondence on August 2, 2016, Plaintiffs detailed deficiencies in the responses received and sought supplemental responses. (Correspondence dated August 2, 2016, Exhibit F attached to Exhibit 1.) Defendants agreed to supplement their deficient discovery responses as requested in Plaintiffs' August 2, 2016 correspondence during a teleconference between counsel on August 11, 2016 prior to the telephonic Status Conference with the Court that same day. Thus, contrary to Defendants' memorandum, whether Plaintiffs are entitled to the requested discovery is simply not at issue.

Pursuant to the Court's instructions, Plaintiffs made efforts to resolve any outstanding discovery issues after the August 11, 2016 Status Conference. Plaintiffs' counsel made multiple attempts to contact Defendants' counsel by phone to no avail. Additionally, on August 17, 2016 Plaintiffs' counsel issued correspondence attaching a proposed Agreed Confidentiality Order and

3

requested the status of Defendants' supplemental responses. On August 22, 2016, Plaintiffs' counsel issued further correspondence seeking the status of the above outlined issues and requested a reply by August 24, 2016. (Correspondences dated August 17, 2016 and August 22, 2016, Exhibits A and E attached to Exhibit 1.) Despite this, Plaintiffs still have not received supplemental responses and Defendants instead filed the "Memorandum Regarding Discovery Issue".

## **LEGAL STANDARD**

Pursuant to Fed.R.Civ.P. 26, the proper scope of discovery is tied directly to the claims and defenses set out in the pleadings of the parties. As provided by Rule 26(b)(1), in relevant part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

In the instant dispute, even a cursory review of the allegations set forth in Plaintiffs' Complaint make plain that the information and documents requested from Defendants are well within the proper scope contemplated by Rule 26 and must be viewed by the Plaintiffs themselves in order to properly understand the information contained therein. (Dkt. 1, Complaint, attached hereto as Exhibit 2.) However, absent from Defendants' memorandum are the salient facts and allegations at the heart of the case. In addition, Defendants inaccurately summarize certain facts as alleged by Plaintiffs. Therefore, Plaintiffs submit the following brief summary of the facts underlying the pending legal claims for the Court's determination regarding the proper scope of discovery.

## **FACTUAL BACKGROUND AND SCOPE OF DISCOVERY**

Dutch Valley Growers ("Growers") was formed in 1933 by a group of farming families who grew onion sets to sell to retailers and wholesalers. Growers has sold onion sets, or onion bulbs intended for planting, to retailers and wholesalers continuously since its formation in 1933. Since the 1990s, Growers also sold garlic, shallots, seed potatoes, asparagus, strawberry roots, and other crop seed and hybrid bulb products (collectively with the onion sets, "Growers' Products") to retailers, wholesalers, and commercial farming operations throughout the United States. (See Exhibit 2 (Dkt. 1) Complaint, ¶¶ 17, 18, and 32.) Accordingly, contrary to Defendants' summary of the facts, Growers did not start selling the Growers' Products two years ago and it is not a "new competitor". Rather, Growers began selling all of these products at least fifteen (15) years before Partners even existed. Also contrary to Defendants' assertion, the decision to separate the businesses in 2014 was not Plaintiffs' decision but the result of Defendants failing to properly account Growers' books, which resulted in the bank calling a significant note and the other Growers not wanting to continue. (See Exhibit 2, (Dkt. 1) Complaint, ¶¶ 52-66.)

Growers has operated using the trade names "Dutch Valley" and "Dutch Valley Growers" to market and sell its products in interstate commerce continuously since the formation of Growers in 1933. Specifically, in 2002, Growers registered and used the domain name, "dutchvalleygrowers.com" to market and sell Growers' Products on behalf of Growers. Additionally, since at least 1996, Growers has used a windmill logo design with Growers' marketing and sale throughout the United States of Growers' Products. The trade names, "Dutch Valley Growers" and "Dutch Valley" and the windmill logo design constitute Growers' common law trade names and marks ("Growers' Marks"). (See Exhibit 2, (Dkt. 1) Complaint, ¶¶ 19-26.)

5

Defendants Rietveld and Rosenberg have no ownership interest in Growers. Rather, Rietveld and Rosenberg were employees (until June 2014) and exclusive sales agents of Growers (until April 2015). Conversely, Plaintiff Paarlberg Farms does have an ownership interest in Dutch Valley Partners ("Partners") and remains a 1/6 member to this day. (See Exhibit 2, (Dkt. 1) Complaint, ¶¶ 8, 10, 27-37.)

This action, in large part, arises from Defendants Rietveld and Rosenberg's misappropriation of Growers' customer files, sales information, QuickBooks and other financial information in June 2014. As alleged in the Complaint, Rietveld and Rosenberg used their positions and access gained as employees and exclusive sales agents for Growers to steal customers, order histories, pricing, and proprietary financial information from Growers to start directly competing businesses, Partners and Hybrids to sell the same products to the same customers of Growers. Plaintiffs have alleged that in June 2014, Rietveld and Rosenberg took all of the Growers' customer files and cloned Growers' computers and QuickBooks files which contained all of Growers' sales and income information, transferred all of this critical sales and income information on to Rosenberg's computer and then refused to return several of Growers' computers including the one used by Rosenberg. The Defendants then, as alleged by Plaintiffs, copied Growers' QuickBooks database again on April 17, 2015, when the exclusive sales agency ended, refused to provide certain computers used by Growers and then returned several computers, which had all of Growers' sales and income data completely deleted and wiped from those computers. (See Exhibit 2, (Dkt. 1) Complaint, ¶¶ 81, 83, 85, 86, 88, 90, 91, 93, 94; also Amended Counterclaim, para. 116-121.)

Rietveld and Rosenberg misappropriated Growers' customers and sales property to operate companies in which they hold an ownership and that directly compete with Growers. As

6

alleged in the Complaint, the wrongdoing began while Rietveld and Rosenberg were acting as both employees and exclusive sales agents of Growers. Indeed, unbeknownst to Growers, Rietveld and Rosenberg started selling identical farm products as Growers to customers of Growers through their own companies, Partners and Hybrids. The competing companies operated by Rietveld and Rosenberg, Partners and Hybrids, continue to sell identical farm products as those sold by Growers to customers, including without limitation, customers of Growers, using Growers' customer and sales information, assets, trademarks and goodwill. (See Exhibit 2, (Dkt. 1) Complaint, ¶¶ 78-126.)

As the Complaint alleges, Rietveld and Rosenberg's wrongdoing began in approximately June 2014, and the operative time frame does not begin in April 2015 as Defendants' memorandum contends. Indeed, their wrongdoing started over two year ago and remains ongoing to this day. Starting in June 2014, Rietveld and Rosenberg took customer files and sales information, copied and cloned Growers' information stored on Growers' computers, retained Growers' customer lists, customer order information, pricing, accounting information in the software program, QuickBooks, and other financial information.

Even after their wrongdoing was discovered, Rietveld and Rosenberg refused to return to Growers all of Growers' computers, customer files, and sales information, including without limitation, customer lists, customer information and order history, and financial records. Rietveld and Rosenberg then deleted virtually all of Growers' information and software and wiped clean the few computers returned to Growers. Rietveld and Rosenberg, upon usurping Growers' customer files and sales information in violation of their fiduciary duties to Growers and as part of their scheme to defraud Growers, issued correspondence on May 20, 2015 to customers of Growers to trade on the goodwill and reputation of Growers and to tortuously interfere with

7

Growers' business relationships with its customers. (See Exhibit 1 attached to (Dkt. 1) Complaint, Exhibit 2.) Finally, it is of note that Defendants' contention that Growers and Partners are in a limited market is <u>not</u> alleged in any of the pleadings.

## THE REQUESTED DOCUMENTS ARE RELEVANT TO PLAINTIFFS' ALLEGATIONS AND CLAIMS

This action is integrally related to the Defendants' misappropriation of Plaintiffs' customer files, sales information, trademarks, trade names, logo, assets and property, and the related improper representations of Defendants as alleged in the Complaint. (Exhibit 2.)[1] As alleged in the Complaint, Defendants' wrongdoing occurred both before and after Rietveld and Rosenberg formally terminated their employment and exclusive sales agent relationship with Growers. Therefore, contrary to Defendants' contention, the information and documents sought by Plaintiffs' discovery requests, including those seeking information and material before and after June 2014, are directly relevant to Plaintiffs' allegations, are well within the proper scope of discovery contemplated by Rule 26 and need to be viewed by Plaintiffs to properly interpret and understand the documents produced.

While Defendants claim in their Memorandum that the discovery dispute relates to the documents requested for sales to customers after April 15, 2015 (e.g. the end of their exclusive sales agency), Growers' discovery requests sought all sales by Defendants from January 1, 2006 and after January 2013 to present because Growers alleges breaches by Defendants both before and after June 2014, which includes while they were acting as Growers' employees and

---

[1] See Complaint, Count I – False Designation of Origin (15 USC 1125(a)); Count II – Violation of Federal Anti-Dilution Statute (15 USC 1125(c)(1)); Count III – False Registration (15 USC 1120); Count IV – Common Law Trademark Infringement and Unfair Competition; Count V – Deceptive Trade Practices (801 ILCS 510/1, et seq.); Count VI – Violation of Trade Secrets Act (765 ILCS 1065/1); Count VII – Breach of Fiduciary Duty; Count VIII – Tortious Interference with Business Relationships; Count IX – Fraud; Count X – Computer Fraud and Abuse Act (18 USC 1030); Count XI – Conversion; Count XII – Declaratory Action (Paarlberg's continued ownership in Partners); and Count XIII – Accounting (Paarlberg is a member of Partners).

exclusive agent. Defendants' response to the discovery is also inconsistent with their position stated in their memorandum, as they claim in their response they have no Growers' sales or customer information <u>before</u> June 2014 and that any documents after June 30, 2014 (<u>not</u> after April 15, 2015) are confidential. (See Defendants' Response to Document Request Numbers 1, 4, 5, 7, 8, 12, 13, 44, 46, 55, 58; Exhibit D attached to Exhibit 1.)

In that regard, Defendants' Memorandum fails to accurately and completely summarize the content of Plaintiffs' Requests. Specifically, the documents sought by the Requests are squarely relevant and include:

**Request No. 1:**  Documents relating to sales of Products by Partners from and after January 1, 2006, including without limitation, purchase agreements, purchase orders, proposals, quotes, invoices, and payments.

**Request No. 2:**  Communications between Defendants and any customers and/or vendors regarding Products; Partners; Growers; Hybrids; the "Dutch Valley", "Dutch Valley Growers", and/or Windmill Logo Design from January 1, 2014 to present.

**Request No. 4:** Documents after January 1, 2006, evidencing that Partners was operating including its sales, identification of the products sold, identity of the customer to whom the sale was made, the date of the sale, the amount of the sale, the amount of the payment including without limitation, purchase agreements, purchase orders, proposals, quotes, and/or invoices.

**Request No. 5:**  Documents relating to sales of any of Products by Hybrids after January 1, 2013, including purchase agreements, purchase orders, quotes and/or invoices.

**Request No. 6:**  Documents relating to use of "Dutch Valley," "Dutch Valley Growers," and/or the Windmill Logo Design by Hybrids from and after January 1, 2013, including without limitation, marketing materials, advertisements, proposals, quotes, invoices, and correspondence with customers.

**Request No. 7:**  Financial statements of Partners after January 1, 2006, including profit and loss statements, income statements, balance sheets, and statements of cash flow.

**Request No. 8:**  Tax returns and schedules of Partners after January 1, 2006.

**Request No. 10:**  Tax returns and schedules of Hybrids after January 1, 2013.

**Request No. 12:**  General ledgers, QuickBooks data, and/or bank statements of Partners after January 1, 2006.

**Request No. 13:**  General ledgers, QuickBooks data, and/or bank statements of Partners after January 1, 2013.

**Request No. 44:**  Rietveld's documents after April 17, 2015 concerning or relating to Partners, including QuickBooks data, customer lists, customer files, customer contact information, customer purchase or order history, pricing, sale of Products, computers, customer purchase history, and financial information.

**Request No. 46:**  Rosenberg's documents after April 17, 2015 concerning or relating to Partners, including QuickBooks data, customer lists, customer files, customer contact information, customer purchase or order history, pricing, sale of Products, computers, customer purchase history, and financial information.

**Request No. 55:**  Documents relating to any right, title, or interest Partners has in any of the property set forth in Paragraph 121 of the Complaint, including purchase orders and/or bills of sale.

**Request No. 58:**  Imaging and inspection of any computers, tablets, cell phones, and electronic storage devices used by any Defendant on behalf of Partners currently in any Defendant's possession.

**Request No. 77:**  Documents from and after January 1, 2006 evidencing, reflecting, and/or relating to any and all telephone, FedEx, and/or Staples accounts held in Partners' name, including without limitation account statements.

## ARGUMENT

As set forth above, Defendants' counsel has already agreed that Plaintiffs are entitled to the requested information and documents, and thus, that matter is should not be at issue. Should the Court elect to consider this issue, the discovery requests issued to Defendants by Plaintiffs are clearly tailored to the allegations of the Complaint and squarely relate to the claims and defenses at issue in the case. Moreover, Defendants have failed to timely object to these requests, as they failed to object within thirty (30) days of the issues of the discovery Fed. R. Civ. P. 34(b)(2)(A) and (C). Plaintiffs maintain that the only outstanding discovery issue for the Court's determination is who should receive or view the responsive material.

10

For instance, with regard to Request Nos. 44 and 46, Plaintiffs seek documents relating to the QuickBooks data, customer and sales information Plaintiffs allege was wrongfully taken from Growers' computers by Defendants. These requests follow-up on Request Nos. 38-40, which request this same information of Growers, and Defendants claim they possess no such Growers' documents or information. Such information and documents produced by Partners which Defendants claim existed after June 2014 or after June 2015 must be reviewed with Plaintiffs as counsel would have no way to ascertain whether the data produced originally belonged to Growers before June 2014 or before April 2015 without assistance from Plaintiffs themselves.

Similarly, in Request No. 58, Plaintiffs seek material relating to the inspection of all computers used by Partners. Plaintiffs have alleged that Defendants wrongfully erased this data from Growers' computers and copied to computers now used by Partners. Plaintiffs must be able to review the responsive production to this request in order to assist counsel in confirming that the files and data are indeed those that originally belonged to Growers.

In addition, Plaintiffs seek sales and customer information in certain requests (e.g., Request Nos. 1, 2, 4, 5, 6, 12, and 13). These requests cover various time periods including after January 1, 2006 and January 1, 2013. Plaintiffs' allege that Defendants used their access as employees and agents of Growers to steal customers, financial, and sales information, and thus such responsive material is particularly relevant to the merits of the case. Again, only Plaintiffs would be able to tell whether the financial, sales information and customer files to be produced previously existed as Plaintiffs' financial information (i.e., customer codes, order configurations, etc.).

11

Similarly, only Plaintiffs (not their attorney) would be able to determine if the documents produced by Defendants concerning "Partners" telephone, FedEx and/or Staples accounts relate to accounts held by Growers.

The particular information set out on the documents requested will unquestionably be more meaningful and likely to lead to the discovery of admissible evidence if Plaintiffs' counsel is able to review the information with Plaintiffs. As noted above, Plaintiffs' counsel has attempted to resolve this issue, beginning on August 11, 2016 via teleconference, by proposing that any information marked "Highly Confidential" shall only be viewed by the parties at the respective offices of their counsel and the parties shall not take any copies or notes relating to such material. Defendants' thus far have refused to accept this compromise with regard to the proposed Agreed Confidentiality Order.

Additionally, the cases cited by Defendants are distinguishable from the facts and allegations at bar. Indeed, the cases cited, including *Jab Distributors, LLC, v. London Luxury, LLC* (2010 WL 4008193) (N.D. Ill. 2010), *Autotech Technologies Limited Partnership v. Automationdirect.com.,* 235 F.R.D. 435 (N. D. Ill, 2006), and *Layne Christensen Company. Purolite Company,* 271 F.R.D. (D. Kansas, 2010) all differ from this case in a fundamental way – none of those cases involved allegations that employees took customer and sales information directly from the requesting party in order to form a competitive business. In this case, Plaintiffs are seeking information and documents which originally belonged to them (and continues to belong to James Paarlberg insofar as he remains a 1/6 member of Partners). Plaintiffs will need to review the responsive material in order to confirm whether Defendants have converted over Growers' particularized sales data, as alleged in the Complaint.

Further, the cases cited by Defendants support Plaintiffs' position that they are entitled to the requested material. Indeed, as noted by the Court in *Autotech*, "[t]he burden to show good cause is on the party seeking the [protective] order." 235 F.R.D. at 440. <u>see also</u> *JAB Distributors*, 2010 WL 4008193, at *3 (competitor relationship cannot be enough in itself to justify refusal to produce the responsive documents sought by relevant requests); Here, as in *Autotech*, a conclusory assumption that customer data is confidential fails to make the particular and specific demonstration of fact that is required for the issuance of a protective order, much less one that prohibits the parties from reviewing responsive material. <u>See id</u>; see also *Layne Christensen*, 271 F.R.D. at 244. Moreover, the basis upon which Defendants largely rely on requesting "attorney eyes only" is its contention that Plaintiff is a "new competitor" in a limited market which is both inaccurate and not based on any facts alleged by any parties in this suit.

Here, Plaintiffs are not even seeking unfettered or unrestricted access to the information Defendants deem to be "Highly Confidential". Rather, Plaintiffs proposed a Confidentiality Order that operates to prohibit the parties from copying or taking any "Highly Confidential" material from the offices of their respective counsel. Plaintiffs have proposed this compromise for both Plaintiffs and Defendants' sale and income information. Defendants have failed to make the requisite showing that an "Attorneys Eyes Only" restriction is warranted here.

Defendants' position is simply untenable in light of the pending legal claims. Plaintiffs allege Defendants stole Growers' QuickBooks, sales and customer information to sell the exact same products sold by Growers to the same customers of Growers through Defendants' own competing businesses. Now Defendants want to also prevent Plaintiffs from viewing this critical information to determine if it in fact came from Growers as Plaintiffs alleged. When the pleadings are viewed in concert with the scope of Rule 26, it is clear that Defendants' position is

wholly unreasonable, as it essentially handcuffs and prejudices Plaintiffs from meaningful discovery regarding the pending claims and defenses.

In addition to the foregoing, Plaintiff Paarlberg Farms remains a 1/6 owner of the Partners entity. As a member of the Partners LLC, pursuant to the terms of the Partners' Operating Agreement and the Illinois Limited Liability Company Act (805 ILCS 180, et seq.), Paarlberg Farms is entitled to review materials maintained by Partners requested in discovery in this matter. Indeed, as provided by The Act, in relevant part:

> Sec. 10-15. Member's right to information.
> (a) A limited liability company shall provide members and their agents and attorneys access to its records, including the records required to be kept under Section 1-40, at the company's principal place of business or other reasonable locations specified in the operating agreement. The company shall provide former members and their agents and attorneys access for proper purposes to records pertaining to the period during which they were members. The right of access provides the opportunity to inspect and copy records during ordinary business hours. The company may impose a reasonable charge, limited to the costs of labor and material, for copies of records furnished.

805 ILCS 180/10-15 (2016). There is no legal basis to prevent Paarlberg Farms from viewing any of the requested documents relating to Partners.

WHEREFORE, Plaintiffs requests that Defendants' request for protective order be denied. Plaintiffs further request that Defendants be ordered to provide the information requested in Interrogatories 1, 3-14, 16-17, 20-23 and produce the documents requested in Document Requests 1- 8, 10, 12-13, 44, 46, 55, 58 and 77 within fourteen (14) days and any other relief this Court deems just and proper.

Dated:  September 12, 2016

Respectfully submitted,
DUTCH VALLEY GROWERS, INC. and
PAARLBERG FARMS

14

By: /S/ Thomas A. Jackson
One of Plaintiffs' Attorneys

Patrick C. Keeley
ARDC #03124539
Thomas A. Jackson
ARDC #06211220
Jason Singleton
ARDC #06275929
David A. Johnson, Jr.
ARDC #6300125
Nicole L. Simmons
ARDC #6295121
Piccione, Keeley & Associates, Ltd.
122C South County Farm Road
Wheaton, Illinois 60187
630-653-8000 - telephone
630-653-8029 (fax)
pkeeley@pkalaw.com
tjackson@pkalaw.com
jsingleton@pkalaw.com
djohnsonjr@pkalaw.com
nsimmons@pkalaw.com
ledland@pkalaw.com

Joseph D. Murphy
ARDC #6192246
Meyer Capel, A Professional Corporation
306 W. Church Street
P.O. Box 6750
Champaign, Illinois 61826-6750
217.352.0030
217.352.9294 fax
jmurphy@meyercapel.com

## CERTIFICATE OF SERVICE

I declare that I am employed in the County of DuPage, Illinois, over the age of eighteen years, and not a party to the within cause.  My business address is 122C South County Farm Road, Wheaton, IL 60187.

On September 12, 2016, I served the within to the following:

### *VIA CM/ECF*

Christopher W. Bohlen
Barmann, Bohlen & Jacobi, P.C.
I.D. 00244945
200 East Court Street, Suite 602
Kankakee, Illinois 60901
815-939-1133 (telephone)
815-939-0994 (fax)
bohlen@kankakeelaw.com

[  ] BY MAIL – As follows:  I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Wheaton, Illinois in the ordinary course of business.  The envelope was sealed and placed for collection and mailing on this date following our ordinary practices.

[ X ] FEDERAL E-FILE -  As follows:  I caused the document to be electronically filed with the ECF system which constitutes service upon all counsel of record pursuant to the rules of this Court.  I am employed in the office of, or am, a member of the bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of Illinois and the United States of America that the above is true and correct.

Executed on September 12, 2016.

_____
Leslie A. Edland