UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **DUTCH VALLEY GROWERS INC. et al.,** | |
| **Plaintiffs,** | |
| v. | Case No.16-2085 |
| **JOHN RIETVELD et al.,** | |
| **Defendants.** | |

### ORDER

This case is before the Court on the Second Motion to Compel Answers to Discovery and Other Relief (#73) filed by Plaintiffs/Counter Defendants Dutch Valley Growers Inc. ("Growers") and James Paarlberg, individually and d/b/a Paarlberg Farms (collectively "Plaintiffs"). Defendants/Counter Plaintiffs, John Rietveld, Dutch Valley Partners, LLC ("Partners"), Dutch Valley Hybrids ("Hybrids") and Kathy Rosenberg (collectively "Defendants") filed a Response to Plaintiff's Second Motion to Compel Answers to Discovery and Other Relief (#79). As directed by the Court, Plaintiffs filed a one page Reply (#80) to Defendants' Response. For the reasons discussed below, Plaintiff's Second Motion to Compel Answers to Discovery and Other Relief (#73) is GRANTED in part and DENIED in part.

I.      Background

Growers is an Illinois corporation formed in 1933 by a group of farming families who grew onion sets to sell to retailers and wholesalers. Rietveld & Rosenberg are siblings who were employed with Growers through mid-2014.

In February 2006, the active shareholders in Growers made the decision to create Partners to sell farm products other than onion sets as a way of assuring that the inactive shareholders in Growers would not share in the profits from this separate business. In February 2006, Paarlberg, Rietveld, and Rosenberg, among others, signed a new Operating Agreement. Pursuant to the Operating Agreement, a member is

prohibited from competing with Partners for a period of two years after the member withdraws from the company. Partners continued as formed until 2014, at which time a number of shareholders of Growers, including Paarlberg, decided to terminate the sale of products other than onion sets, while Rietveld and Rosenberg desired to continue in the sale of these products. To effectuate this change, Paarlberg made a motion at a corporate meeting of Growers that Rietveld will own Partners, and the motion passed. Rietveld then began the separate operation of Partners, and Paarlberg terminated his interests in Partners.

Plaintiffs' Complaint alleges that after the split Rietveld and Rosenberg misappropriated Growers' property, including Growers' name, trademarks, confidential business information and trade secrets. The Complaint specifically alleges that Defendants are "selling identical competing farm products as those sold by Growers to customers, including without limitation, customers of Growers, using Growers' trademarks, information, assets, and goodwill." (Plaintiffs' Complaint, #1, ¶ 2.)

In the instant Motion to Compel, Plaintiffs allege that Defendants have failed to provide complete answers to Plaintiffs' discovery in three categories: 1) failing to supplement answers to Plaintiffs' Interrogatories; 2) failing to provide relevant documents in response to Plaintiffs' Request for Production; and 3) improperly redacting documents provided in Defendants' Supplemental Production of Documents.[1]

## II. Legal Standard

Federal Rule of Civil Procedure 26(b)(1) provides that the

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

---

[1] As noted in the title, this is Plaintiffs' second Motion to Compel. The Court granted Plaintiffs' first Motion to Compel (#67) in part (#71, #76), directing Defendants to provide Plaintiffs with three computers currently in Defendants' possession that allegedly contained Growers' information at one time.

2

> information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1). The district court exercises significant discretion in ruling on a motion to compel. *Gile v. United Airlines*, 95 F.3d 492, 495-496 (7th Cir. 1996). It may grant or deny the motion in whole or in part. *Id*. In exercising its discretion, the district court may deny discovery to protect a party from undue burden. *Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1171 (7th Cir. 1998). Rule 33 permits a party to serve up to 25 written interrogatories on another party. FED. R. CIV. P. 33(a). "An interrogatory may relate to any matter that may be inquired into under Rule 26(b). Under Rule 33(b)(3), "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."

Under Rule 34, "A party may serve on any other party a request within the scope of Rule 26(b): to produce and permit the requesting party or its representative to inspect, copy, test, or sample the following items in the responding party's possession, custody, or control." FED. R. CIV. P. 34(a)(1). A party's "response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." FED. R. CIV. P. 34(b)(2)(B).

Rule 26(a)(2) provides that the parties must supplement their disclosures when required under Rule 26(e). Under Rule 26(e), a party must supplement its discovery disclosures "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." FED. R. CIV. P. 26(e).

III. **Analysis**

   a. **Interrogatories**

Plaintiffs first served Defendants the Interrogatories on April 16, 2016. On July 22, 2016, Defendants served their Answers to Interrogatories. After receiving the

Answers, Plaintiffs notified Defendants of alleged deficiencies and sought supplemental responses. According to Plaintiffs, Defendants agreed to submit supplemental responses during a telephone conversation on August 11, 2016. As of the date Plaintiffs filed this motion, Defendants had failed to file supplemental responses. Then on February 7, 2017, Defendants mailed to Plaintiffs Supplemental Answers to Interrogatories, which were dated November 21, 2016.

Plaintiffs' Motion argues that Defendants failed to provide complete answers to Plaintiffs Interrogatory Numbers 1, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13, 14, 16, 17, 20, 21, 22 and 23. Defendants' Response states that Plaintiffs' argument is moot due to the supplemental responses to the interrogatories Defendants submitted on February 7, 2017. Plaintiffs' Reply acknowledges that Defendants did provide supplemental responses, but argues that Defendants' responses to Interrogatory Numbers 4, 5, and 8 remain deficient. The Court will therefore address Interrogatory Numbers 4, 5, and 8, but Plaintiffs' Motion as it relates to Interrogatory Numbers 1, 3, 6, 7, 10, 11, 12, 13, 14, 16, 17, 20, 21, 22 is denied as moot.

The Court notes that Defendants did not object to any portion of Interrogatories 4, 5, or 8, and therefore any objection is waived. FED. R. CIV. P. 33(b)(4) ("Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.") The Court will consider each remaining Interrogatory in turn.

### i. Interrogatory Number 4

Interrogatory Number 4 asks Defendants to:

> Identify any and all agreements from and after January 1, 2006, between Growers and any Defendant regarding ownership, use, and/or registration of the marks, "Dutch Valley," "Dutch Valley Growers," and/or the Windmill Logo Design, including without limitation, stating whether the agreement is oral or written, the date of the agreement, who negotiated the agreement on behalf of each of the parties to the agreement, and all of the material terms of the agreement.

Plaintiffs' Interrogatories, #73, Exhibit 1, p. 4.

Defendants' Answer to Interrogatory Number 4 states:

4

> Orally the parties agreed that all marks, including "Dutch Valley", "Dutch Valley Growers" and/or the Windmill Logo Design, without limitation, were to be owned by Dutch Valley Partners. This decision was suggested by counsel and agreed to by all members of Dutch Valley Growers. At a later time, Dutch Valley Growers executed a written agreement with John Rietveld, indicating that both could mutually co-exist using the trademark "Dutch Valley", the Windmill Logo and "Dutch Valley Partners". For specific terms of the agreement, see attached written agreement.

Defendants' Answers to Interrogatories, #73, Exhibit 2, p. 3.

After receiving Defendants' Answers, Plaintiffs notified Defendants as to several deficient responses. Regarding Defendants' Answer to Interrogatory Number 4, Plaintiffs stated:

> Your clients fail to identify the date of the alleged agreement to register all of Growers' marks into Partners, the identity of the person who negotiated the agreement on behalf of each of the parties and all of the material terms of the alleged agreement. Moreover, your clients claim that the decision was suggested by counsel and agreed to by all members of Dutch Valley Growers but failed to identify when this suggestion occurred, by which counsel and how all members of Growers agreed to this purported agreement. In addition, you reference a written agreement. Please identify the written agreement to which you refer by Bate Stamp number.

Letter from Plaintiffs' Counsel, August 2, 2016, #73, Exhibit 3, p.2.

Defendants' Supplemental Answer to Interrogatory Number 4 adds the following:

> Emails occurred between, John Rietveld and Troy Lundquist as well as John Rietveld and Eclipse Group in late 2011, early 2012. An unexecuted copy of the written agreement was included in our initial responses as Bates Stamp numbers 153-154.

Defendants' Supplemental Answers to Interrogatories, #79, Exhibit A, p. 3. Plaintiffs' Reply states that Defendants' answer to Number 4 remains deficient because Defendants have yet to identify who negotiated the agreement, when the agreement

5

was made, and how all members of Growers agreed to the purported agreement. Plaintiffs' Reply, #80.

Defendants' response to Plaintiff's Interrogatory Number 4 remains deficient. Defendants provided the Bates Stamp numbers of the alleged written agreement and noted that emails were exchanged between John Rietveld and Troy Lundquist and John Rietveld and Eclipse Group in 2011 and 2012. But, Defendants did not specify whether these emails constituted the negotiations of the written agreement, the specific dates of the emails, whether the emails were produced and if so where, or answer how all members of Growers agreed to the purported agreement. Therefore, pursuant to Rule 33(b)(3), the Court directs Defendants to provide a supplemental response within seven days answering the interrogatory in full, including the date the agreement was reached, which individuals negotiated the agreement, and detail how all members of Growers agreed to the purported agreement.

### i.  Interrogatory Number 5

Interrogatory Number 5 asks Defendants to:

> Identify any and all communications from and after January 1, 2006, between or among any of the parties regarding the ownership, use, and/or registration of the marks, "Dutch Valley," "Dutch Valley Growers," and/or the Windmill Logo Design, including without limitation, stating the date of the communication, where the communication took place, the form of the communication (i.e., letter, e-mail, telephone, in person, etc), the identity of all of the participants in the communication, and what was said by each participant in the communication.

Plaintiffs' Interrogatories, #73, Exhibit 1, p. 5.

Defendants' Answer to Interrogatory Number 5 states:

> There were various emails and conversations between John Rietveld and Jim and Amy Paarlberg as well as conversations that occurred in board meetings through 2014. Conversations also occurred between John Rietveld and other Growers in Spring and Summer of 2014.

Defendants' Answers to Interrogatories, #73, Exhibit 2, p. 3.

Plaintiffs' letter detailing the specific deficiencies stated:

> Your clients fail to state when the conversations took place between Mr. Rietveld and Jim and Amy Paarlberg regarding the ownership, use and/or registration of the trademarks and what was said during those conversations. In addition, your clients fail to identify participants in the conversations that allegedly took place between Mr. Rietveld and "other Growers" and the substance of those conversations.

Letter from Plaintiffs' Counsel, August 2, 2016, #73, Exhibit 3, p.2.

Defendants' Supplemental Answer to Interrogatory Number 5 adds the following:

> In Spring 2014, discussions took place between John Rietveld and all Dutch Valley Growers regarding Dutch Valley Partners turning over the trademarks of Dutch Valley Growers.

Defendants' Supplemental Answers to Interrogatories, #79, Exhibit A, p. 4.

Plaintiffs' Reply states that Defendants' answer to Number 5 remains deficient because "Defendants fail to identify what was said by each participant in the communication." Plaintiffs' Reply, #80.

The content of these conversations clearly is discoverable as it is relevant to Plaintiffs' claim that Defendants improperly used Growers' property, including Growers' trademark. See Plaintiffs' Complaint, #1. Interrogatory Number 5 explicitly requested Defendants provide "what was said by each participant in the communication." Defendants answered the interrogatory in part, but did not answer this question, nor did they object to the request. Because this information is discoverable, the Court directs Defendants to provide a supplemental response within seven days answering this portion of the interrogatory in full.

### i. Interrogatory Number 8

Interrogatory Number 8 asks Defendants to:

> Identify any and all communications from and after January 1, 2014, between any Defendant and any customer and/or vendor regarding Products; the "Dutch Valley," "Dutch Valley Growers," and/or Windmill Logo Design; Growers;

7

> Partners; and/or evidencing any confusion regarding which entity the customer and/or vendor dealt with, including without limitation, the date of the communication, where the communication took place, the form of the communication (i.e., letter, e-mail, telephone, in person, etc), the identity of all of the participants in the communication, and what was said by each participant in the communication.

Plaintiffs' Interrogatories, #73, Exhibit 1, p. 6.

Defendants' Answer to Interrogatory Number 8 states:

> No communications with customers or vendors about the trademarks or windmill logo. Plaintiffs are in possession of all records through 2014. From August 2014 to present, there were some telephone calls and/or emails from a few customers and/or vendors where we clarified the split of the two companies and cleared up any confusion caused by their contact from Ryan Paarlberg and misstatements he made in conversations with them.

Defendants' Answers to Interrogatories, #73, Exhibit 2, p. 4.

Plaintiffs' letter detailing the specific deficiencies stated:

> Your clients' response fails to provide all of the requested information regarding the communication with any customer and/or vendor regarding Products, the trademarks, Growers, Partners and/or any confusion as requested in this interrogatory. Moreover, despite identifying certain emails from clients and/or vendors, you fail to identify or produce such emails.

Letter from Plaintiffs' Counsel, August 2, 2016, #73, Exhibit 3, p.2.

Defendants' Supplemental Answer to Interrogatory Number 8 adds the following:

> As previously indicated, no communications with customers or vendors about the trademarks or windmill logo. Plaintiffs are in possession of all records through 2014. From August 2014 to present, there were some telephone calls and/or emails from a few customers and/or vendors where we clarified the split of the two companies and cleared up any confusion caused by their contact from Ryan Paarlberg and misstatements he made in conversations with them, said

>emails and correspondence were included in our initial responses as Bates numbers 163 to 172.

Defendants' Supplemental Answers to Interrogatories, #79, Exhibit A, p. 5.

Plaintiffs' Reply states that Defendants' answer to Number 8 remains deficient because:

>Defendants fail to provide the requested information with respect to communications regarding Products, Growers, and/or Partners, fails [sic] to identify by name the customer and/or vendors from whom telephone calls were received, and fails [sic] to identify what was said in connection with such telephone calls.

Plaintiffs' Reply, #80.

Therefore, Plaintiffs seek the following: 1) any communications regarding Products, Growers, and/or Partners; and 2) details regarding the disclosed telephone calls. Defendants' Answer and Supplemental Answer note that Defendants did not have communications with customers or vendors about the trademarks or windmill logo. Defendants, however, do not answer whether they had communications regarding Products, Growers, and/or Partners. This information is relevant to Plaintiffs' claim that Partners was improperly competing with Growers and is therefore discoverable.

Defendants fully answered Plaintiffs' interrogatories as to email communications, but did not identify the details of any telephone communications. Defendants' Answer acknowledged that there were some relevant telephone calls from August 14, 2014 through the date of Defendants' Answer, but does not provide the name of the individual with whom they spoke or the content of the telephone communications.

These communications regarding Products, Growers, and/or Partners are relevant to Plaintiffs' allegations that Defendants improperly used Growers' property in violation of the Operating Agreement. The Court therefore directs Defendants to provide a supplemental response within seven days answering this portion of Interrogatory Number 8 in full.

b. **Supplemental Production of Documents**

Next, Plaintiffs' Motion argues that Defendants failed to produce documents in response to Plaintiffs' Request to Produce. Plaintiffs list the following documents: 1) Request Number 4: sales reports from 2014-2015 and 2015-2016 (Bates Stamp numbers 172-174) and all invoices sent by Partners to all customers; 2) Request Numbers 8 and 10: the relevant schedules contained in Mr. Rietveld's personal tax returns concerning both Partners and Hybrids; and 3) Request Numbers 12 and 13: all bank statements for Partners and Hybrids.

The sales reports from 2014-2015 and 2015-2016, Bates Stamp numbers 172-174 were reportedly provided by Defendants on February 7, 2017. Defendants' letter to Plaintiffs' counsel, February 7, 2017, #79, Exhibit 2. Therefore, Plaintiffs' request for sales reports from 2014-2015 and 2015-2016 (Bates Stamp numbers 172-174) is denied as moot.

For the remaining documents, Plaintiffs state that the parties conferred on these documents on December 1, 2016, pursuant to Rule 37. During this conference, Plaintiffs allege that Defendants agreed to produce each of these documents. Plaintiffs sent a letter dated December 6, 2016, to defense counsel confirming that Defendants agreed to provide the documents. Letter from Plaintiffs' Counsel, December 6, 2016, #73, Exhibit 6, p.1. The Court will consider these remaining documents in turn.

i. **Invoices**

Plaintiffs' Request Number 4 in part asked Defendants to provide invoices dated January 1, 2006, and beyond. Defendants note that they have provided Plaintiffs with a "complete list of all sales reports showing the sales of products to each customer" and that this list notes to whom sales were made, the product sold, and the amount of the sales. Defendants argue that requiring the production of the invoices would be duplicative and unduly burdensome because they do not have clerical staff and the three years' worth of invoices are "randomly filed and many pages."

Assuming the exact information from the invoices is also included in the previously disclosed sales reports, the Court finds that the burden of requiring

Defendants to produce the numerous sales invoices outweighs any probative value to Plaintiffs, especially considering that Defendants have already provided sales reports detailing the product sold, the customer name, and the amount of the sales. However, to ensure the accuracy and thoroughness of the sales reports, the Court directs Defendants to produce to Plaintiffs all sales invoices dated March 1, 2015 through March 31, 2015. If Plaintiffs find inconsistencies between the invoices and corresponding sales reports, Plaintiffs may renew their motion to compel all invoices.

### ii. Rietveld's Tax Documents

Plaintiffs' Request Number 8 seeks the tax returns of Partners from January 1, 2016 and Request Number 10 seeks the tax returns of Hybrids from January 1, 2013. Defendants did not produce any documents in response to Requests Number 8 or 10, stating:

> 8. Records from 1/1/06 to 6/30/14 are in possession of the Plaintiffs. All documents subsequent to 6/30/14 are confidential and proprietary. Such documents if produced will provide a competitive advantage to Plaintiffs and disadvantage to Defendants.
>
> 10. None. Part of personal tax returns of John Rietveld, privileged.

Defendants' Supplemental Response to Request for Production, #73, Exhibit 4, p. 3-4. According to Plaintiffs' letter dated December 6, 2016, Defendants agreed to provide "the relevant schedules contained in Mr. Rietveld's personal tax returns that concern both Partners and Hybrids." Letter from Plaintiffs' Counsel, December 6, 2016, #73, Exhibit 6, p.1. Defendants' Response notes that within seven days of the Response, Defendants will produce the "schedules which are a portion of John Rietveld's personal tax returns which reelect the income and expenses of the two corporations for the years 2014 and 2015, the only documents which exist since the division of the businesses." Defendants' Response, #79, p.3. As Defendants report that they have provided the agreed upon responsive documents, Plaintiffs' Motion as to Request Numbers 8 and 10

is denied. Plaintiffs may renew their motion if they did not receive the documents as promised.

### iii. Bank Statements

Plaintiffs also seek all bank statements for Partners after January 1, 2006 and from Hybrids from January 1, 2013. Defendants' Supplemental Response to Plaintiffs' Request to Produce stated that there were "no bank statements to produce." Defendants' Supplemental Response to Request for Production, #73, Exhibit 4, p. 4. According to Plaintiffs' letter dated December 6, 2016, Defendants agreed to provide "the bank statement for Partners and Hybrids." Letter from Plaintiffs' Counsel, December 6, 2016, #73, Exhibit 6, p.1. Defendants' do not acknowledge this alleged agreement and instead argue that the production of documents is burdensome and unnecessary as Defendants have already provided their entire general ledger and sales reports.

Unlike with the invoices discussed above, the burden of producing bank statements is small. Defendants need only produce the bank statements in their possession, resulting in minimal cost or time. Defendants' financial information goes to the heart of this case. Plaintiffs' Complaint alleges that, in 2013, Defendants failed to maintain separate books and records for Growers and Partners. Plaintiffs' Complaint, #1, p. 12. This failure allegedly caused Defendants to overdraw Growers' bank account by over $300,000.00 in 2014. *Id*. at 13. The bank account records of Partners and Hybrids may reveal information as to Defendants' management of the accounts during the time in question. Further, providing the bank statements will allow Plaintiffs to evaluate the accuracy of the records already provided, including the general ledger and sales reports. Because the burden and cost of production is relatively low and because the information contained in the bank statements relates to central issue in the case, Plaintiffs' Motion as to the bank statements is granted. The Court directs Defendants to produce the requested bank statements in their possession within seven days.

### c. Redacted Information

Finally, Plaintiffs argue that Defendants improperly redacted information from their Supplemental Production of Documents, specifically "approximately 19 customer names from the Partner customer contact list and from the sales information and general ledger of Partners." Plaintiffs argue that the Agreed Confidentiality Order entered into by the parties does not permit any party to redact information. Plaintiffs further note that there is no basis for the redaction. Plaintiffs attempted to confer with Defendants pursuant to Rule 37 regarding the redacted information, but did not receive a response.

Defendants note that the documents containing the redactions are "highly confidential documents" and that allowing Plaintiffs the opportunity to view these documents would give Plaintiffs an "incalculable" competitive advantage. The documents at issue were filed under seal for the Court's review.

In August 2016, Defendants filed a Motion for Protective Order (#56), asking the Court to enter an order allowing Defendants to produce documents, but restrict them to "Attorneys Eyes Only." These documents included information relating to the sales, vendors, customers, and invoices of Partners, as well as several other pieces of financial and sales information directly related to the operation of Partners. The Court denied Defendants' protective order and directed the parties to submit an agreed less restrictive protective order adopting Plaintiffs' proposed protective order. Order, October 17, 2016, #61. The parties' Agreed Confidentiality Order provided in relevant part that:

> [A] party producing documents may designate them as "Highly Confidential Information" if the producing party believes in good faith that the documents contain confidential material that would be detrimental to the business affairs of the producing party if that confidential material were disclosed to the principals and management of an opposing party, without further restriction as set forth herein. Highly Confidential Information may be disclosed to the principals and management of an opposing party only at the offices of that party's counsel, for visual inspection only. No copies shall be provided to principals or management of an opposing party of documents designated as Highly

>Confidential Information nor shall any principals or management of an opposing party be permitted to take notes, photos, or recordings of any Highly Confidential Information during visual inspection(s).

Agreed Confidentiality Order, October 28, 2016, #63. The Court previously found that these protective measures were sufficient to guard against the risk of either party gaining "an unfair competitive advantage" by viewing documents that would result in a business detriment to the disclosing party. Defendants even acknowledge the Court's prior order in their Response by noting "[w]hile this court's order allowing plaintiffs to view these documents but make no notes or use the documents is intended to limit the use of those documents, that order is simply not realistic." Defendants have attempted to circumvent the Court's Order by submitting the information with redacted portions, in violation with the parties' Agreed Confidentiality Order. Therefore, the Court grants Plaintiffs' Motion as to the redacted documents, and directs Defendants to provide an unredacted version of the documents, presumably marked as "Highly Confidential Information," within seven days.

## IV. Conclusion

For these reasons, Plaintiffs' Second Motion to Compel (#73) is granted in part and denied in part. Defendants are ordered to provide the supplemental answers, responses, and documents as directed above within seven days of this order.

This is Plaintiffs' <u>second</u> motion to compel that the Court has considered and mostly granted. Rule 37 provides that a court "must" assess fees and expenses where the court grants a motion to compel or if the requested discovery is provided after the motion is filed. Defendants are directed to show cause on or before March 20, 2017, why expenses should not be assessed under Rule 37(a)(5)(A) or (C).

ENTERED this 7th day of March, 2017.

s/ERIC I. LONG<br>
UNITED STATES MAGISTRATE JUDGE